United States District Court
Southern District of Texas
**ENTERED**
July 25, 2018
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JOEL MELO-CEDANO, | § | |
| Petitioner, | § | |
| | § | Case No. 1:17-cv-005 |
| v. | § | (Criminal Case No. 1:15-cr-00741-1) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Before the Court is Petitioner Joel Melo-Cedano's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter, Melo-Cedano's "§ 2255 Motion"). Dkt. No. 1. The Court is also in receipt of Respondent's "Memorandum in Response to § 2255 Motion." Dkt. No. 17. For the reasons stated herein, it is recommended that Melo-Cedano's § 2255 Motion be **DISMISSED**. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## I.    Jurisdiction

This Court has jurisdiction over Melo-Cedano's Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II.    Background and Procedural History

A federal grand jury indicted Joel Melo-Cedano on August 26, 2015, charging him with the offense of being unlawfully found within the United States after

deportation, having previously been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). *United States of America v. Joel Melo-Cedano*, 1:15-cr-00741-1, Cr. Dkt. No. 6.[1]  Through court-appointed counsel, Hector Garza, Melo-Cedano pleaded not guilty on September 3, 2015.  Cr. Minute Entry, dated September 3, 2015.  The Court subsequently granted Garza's motion to withdraw as Melo-Cedano's attorney, and appointed Jaime Diez to serve as Melo-Cedano's new attorney.   Cr. Dkt. No. 20.    Melo-Cedano  pleaded  guilty  in  rearraignment proceedings before the Court on January 14, 2016.  Cr. Minute Entry, dated January 14, 2016.

United States District Judge Rolando Olvera sentenced Melo-Cedano to 45 months of imprisonment on April 13, 2016.  Cr. Dkt. No. 56.  Judgment was entered on April 29, 2016.  Cr. Dkt. No. 51.  Melo-Cedano appealed.  Cr. Dkt. No. 47.  Prior to the disposition of his appeal, however, on September 28, 2016, Melo-Cedano filed a pro se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence by a Person in Federal Custody.  Cr. Dkt. No. 61.  Judge Olvera dismissed the § 2255 Motion with prejudice because Melo-Cedano's appeal was still pending.  Cr. Dkt. No. 63.  The Fifth Circuit affirmed Melo-Cedano's conviction on January 9, 2017.  Cr. Dkt. No. 64.  Melo-Cedano did not file a petition for a writ of certiorari.

On January 17, 2017, Melo-Cedano submitted the instant Motion.  Dkt. No. 1.  On March 27, 2017, the Court ordered Melo-Cedano's trial counsel, Garza and Diez, to file signed, sworn affidavits addressing Melo-Cedano's claims.  Dkt. No. 10.

---

[1] Hereinafter, Melo-Cedano's criminal case docket entries ("Cr. Dkt. Nos.") will be referred to only by their docket entry numbers.

Diez filed his affidavit in response to the Court's order on April 18, 2017.  Dkt. No. 15.  Garza filed his affidavit on April 21, 2017.  Dkt. No. 16.  The Government responded to Melo-Cedano's Motion on May 23, 2017.  Dkt. No. 17.  Melo-Cedano received copies of both attorneys' affidavits on November 8, 2017.  Dkt. No. 20.

### III.   Legal Standards

**28 U.S.C. § 2255.**  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**Ineffective Assistance of Counsel.** The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.  *Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  Critical stages include not only trial, but also pretrial proceedings—including the

plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

To demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998).

Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Strickland*, 466

U.S. at 689.  To establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong.  *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997).  Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice.  *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987).  It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.  *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV.   Discussion

### A. Grounds One and Two

Liberally construed, Melo-Cedano's Motion asserts that Diez and Garza were both ineffective for (1) failing to collaterally attack the underlying deportation order against Melo-Cedano, and (2) failing to investigate the validity of the order and

Melo-Cedano's immigration circumstances. Dkt. No. 1 at 4, 5.   Melo-Cedano maintains that, had trial counsel objected to the deportation order, he could have been entitled to relief from an immigration judge due to "[i]nformation of a family petition for an approve Visa under the old existing Law that grants . . . discretionary relief under the Immigration Law." *Id.* He states, "Prior to any initial deportation I resided in the U.S. with legal status for over more than 7 years and the Immigration Judge who order me remove did not advised me of this substantial rights and the deportation order violated my right to substantial Due Process." *Id.* Because the substance of the claims against both attorneys is the same, the Court considers them together.

### 1. Alleged failure to collaterally attack the deportation order

Under the *Strickland* test, to raise a claim for ineffective assistance of counsel, Melo-Cedano must show both deficient performance by counsel and resulting prejudice. *Strickland*, 466 U.S. at 687.  In *United States v. Mendoza-Lopez*, the "Supreme Court held that when a determination made in an administrative proceeding plays a critical role in a subsequent imposition of a criminal sanction, such as sentencing a defendant convicted for illegal reentry into the United States after deportation, there must be some opportunity for meaningful review of that administrative proceeding." *Cruz-Reyes v. United States*, No. 1:15-CV-071, 2016 WL 1715339, at *4 (S.D. Tex. Apr. 5, 2016), *adopted by*, 2016 WL 1718266 (S.D. Tex. Apr. 27, 2016) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)).  "[A]t a minimum, this meant that some means of judicial

review must be made available in order to challenge defects in the proceeding." *Id.* The statute under which Melo-Cedano was convicted, 8 U.S.C. § 1326, provides for collateral attack of a deportation order if the defendant can satisfy three prerequisites. Under 8 U.S.C. § 1326(d), "an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that – (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Fifth Circuit has interpreted 8 U.S.C. § 1326(d) and *Mendoza-Lopez* to require a litigant seeking collateral attack of a deportation order to show: "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Cordova-Soto*, 804 F.3d 714, 718-19 (5th Cir. 2015). "Actual prejudice" requires that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id.* at 719. "[L]itigants must support all three prongs, and a failure to support one prong precludes a court from having to consider the others." *Cruz-Reyes*, 2016 WL 1715339, at *4.

Melo-Cedano has not alleged that he could have satisfied any of the prerequisites for a collateral attack on the deportation order. As such, the Court cannot conclude that Garza or Diez should have challenged the validity of Melo-

Cedano's deportation hearing.   Melo-Cedano "does not state any information regarding: (1) what took place at the hearing; (2) what he told his attorneys; and (3) how even a hypothetical procedural deficiency in his prior deportation proceeding prejudiced him." *Cruz-Reyes*, 2016 WL 1715339, at *4.  He does not, for example, contend that the federal regulations set in place for his removal were violated, meriting a determination of fundamental unfairness.  *See, e.g., Lopez-Vasquez*, 227 F.3d at 485.  Melo-Cedano's cursory assertion that he resided in the United States with legal status for over seven years is also belied by the record—the presentence investigation report ("PSR") details his various deportations from the United States over the course of two decades.  Cr. Dkt. No. 39.  As will be discussed below, both of his attorneys also testified that they investigated this claim and could find nothing to substantiate it.  In addition, one portion of this unrebutted testimony states that Melo-Cedano was previously denied an application for temporary residency in 1989, and that he had failed in an application for cancellation of removal at a later date, both diluting his claim that he had legal status in the United States.  Dkt. No. 16.

Even assuming Melo-Cedano could have satisfied the other prerequisites for collaterally attacking the deportation order, he has not shown he could have established "actual prejudice."  Melo-Cedano's lengthy criminal history included two counts of conspiracy with intent to distribute marijuana in 1991, and strongly weighs against a conclusion that, but for the vague alleged errors in the process, he would never have been deported.   Cr. Dkt. No. 39 at 5-16.   "In short, '[i]f the defendant was legally deportable and, despite the INS's errors, the proceeding could

not have yielded a different result, the deportation is valid for purposes of section 1326." *United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) (citation omitted).  Because the Court is unable to determine that a collateral attack on the deportation order would have been possible, Garza and Diez did not perform deficiently in withholding this type of challenge, and there was no ineffective assistance of counsel as to this ground.

### 2. Alleged failure to investigate

 "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).   "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.   The Fifth Circuit "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment." *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998) (internal quotations marks and citations omitted).

Melo-Cedano alleges that his attorneys failed to investigate his immigration status.  Garza's affidavit in response states:

> 3. I met with Mr. Melo on numerous occasions to discuss his charge, his rights and the Government's evidence against him.  Early on in our relationship, Mr. Melo claimed to have authorization to enter or remain in the United States and, therefore, he had a legal defense. I investigated his claim, but I was not able to find any evidence [of] his contention.  He remained insistent on his assertions and asked me to

request a continuance to investigate further the matter.

      4. I filed a motion for continuance on September 23, 2015, which was granted the next day. I continued to investigate Mr. Melo's claims and eventually met with him to report the results of my investigation. During our meeting, I highlighted that the Government had evidence that *he was denied an application for temporary residency* on October 10, 1989; that he was removed or deported on January 5, 2015, July 9, 2011 and September 9, 1993; and, that he had felony convictions in 1993 and 2014. I further explained that documents provided to me by his wife . . . indicated that *an application for cancelation of removal had also failed* and he was ordered removed or deported accordingly. I made it clear that there were no documents showing that he had permission to enter or remain in the United States.

      5. Mr. Melo became upset and accused me of not helping him and not doing my work. At some point he became belligerent and said he wanted to fire me and get a new attorney. Seeing that the communication between Mr. Melo and me was irremediably broken, I filed a motion to withdraw as counsel and for appointment of new counsel. The motion was granted on November 4, 2015. I withdrew from the case and attorney Jaime Diez was appointed to represent Mr. Melo.

Dkt. No. 16 (emphasis added). Garza's testimony is substantiated by a motion for continuance he filed on Melo-Cedano's behalf, granted on September 24, 2015. Cr. Dkt. Nos. 14, 15. His assertions regarding Melo-Cedano's criminal history are supported by the findings of the PSR. Cr. Dkt. No. 39. Garza's conduct did not fall below an objectively reasonable standard of conduct. And, even if it had, Melo-Cedano has not expressed how, but for the alleged error, the outcome of his plea process would have been different. *Washington v. Davis*, No. 3:16-CV-0078-G-BK, 2017 WL 2126650, at *3 (N.D. Tex. Apr. 3, 2017). Given that Garza withdrew from the case prior to the entry of a plea, the Court finds no basis for prejudice.

Melo-Cedano raises similar assertions against Diez. Diez's affidavit in response states:

(2) Shortly after I was appointed I met with him to review his case. Upon meeting with him I learned that he was under the impression that he could become a legal permanent resident. (See Exhibit 1).

(3) So, I immediately asked the AUSA in charge of the case if I could review his A File.  On December 5, 2015 I reviewed his A file.

(4) Defendant explained to me that before he was arrested he had hired attorney Lilia Garcia in 2014.  And that she had filed for him an I-130 Visa Petition through his USC spouse. This attorney had incorrectly informed him that despite having been removed that he was still eligible for cancellation of removal because he had lived in the U.S. since childhood. I informed him that was not correct. So I send a fax on July 21, 2015 to this attorney informing her that I had been appointed to represent his former client. And informing her that because he had been removed from the United States after having been convicted of a drug offense he was not eligible for cancellation of removal or adjustment . . . .

(5) Defendant agreed that the record show that on June 14, 1991 he pled guilty to possessing with intent to distribute 76 pounds of marijuana (U.S. District Court No B-91-25). That for that offense he was sentenced to 15 months in custody and 4 years of probation. That on February 21, 1992 he was deported.  I informed him that there was no relief available for him. I informed him unless the law change, which I really didn't though so, he would never be able to immigrate to the U.S. since there a person could no immigrate to the United States if he has a drug conviction involving possession of not more than 30 grams of marihuana.

(6) On January 14, 2016, after having met with Defendant on several times and answered him all the questions he had about his legal options he pled guilty . . . .

(7) Thereafter, I met with him on several occasions in order to work on a record for the Sentencing hearing, to show the court that despite his numerous arrest, that he had changed, that he now understood and accepted he was not going to ever immigrate to the United States. That once he completed his sentence he would not return to the United States.  So, I filed a "sealed motion" requesting the lowest sentence possible, and addressing the incorrect understanding by Defendant that he had from prior counsel (allegedly attorney Lilia Garcia) regarding his possibility to ever immigrate to the United States.  (See Exhibit 3) On March 8, 2016 I filed a second set of exhibits in support of our request for a lower sentence.  (See Exhibit 4)

(8) On April 13, 2016 he was sentenced to 45 months in prison. (See Exhibit 5) . . . .

(14) In total, during the time I represented I visited him approximately fifteen times to answer any questions he had an I did so to the best of my ability.

Dkt. No. 15.   In support of this account, Diez attached a substantial amount of evidence, including (1) his correspondence with the U.S. Attorney's Office requesting Melo-Cedano's "A-file," (2) his correspondence with Lilia Gonzales, Melo-Cedano's prior attorney, (3) and relevant portions of the PSR in Melo-Cedano's case. Dkt. No. 15-1 at 2-7.   This evidence shows that Melo-Cedano had been informed by Gonzales that "Cancellation of Removal relief [would be] available in [his] deportation hearing." *Id.* at 8.   Diez's reasons for not pursuing this relief, however, are compelling.   As Diez, an attorney board-certified in immigration law, indicates, Melo-Cedano's criminal history would not have allowed for a cancellation of removal, regardless of his wife's citizenship or his residency in the United States since childhood.

The only evidence before the Court shows that Diez investigated these issues, rebutting Melo-Cedano's claim that he was ineffective by failing to do so.   Melo-Cedano has not disputed Diez's account, nor has he made any additional filings since he initially submitted his § 2255 Motion.   Diez's conduct was not deficient, and even it had been, the Court finds no basis for a finding of prejudice, because Melo-Cedano "has wholly failed to allege, much less show, that the outcome of the plea process would have been different had counsel made a reasonable investigation[.]" *Washington*, 2017 WL 2126650, at *3.   In sum, Melo-Cedano's claims that Garza and Diez were ineffective are meritless, because he has not established either

deficient performance or prejudice as to either attorney.

### B. Ground Three

As his third ground, Melo-Cedano argues that he was denied due process under the Fifth Amendment because he never had an opportunity to contest the underlying deportation order. He asserts that he was not allowed to contest his removal due to an aggravated felony conviction. Dkt. No. 1 at 8. According to Melo-Cedano, if he had an opportunity to contest the order, he could have shown that he was a lawful permanent resident, and that on his eighteenth birthday, his stepfather had adopted him, obtaining an "immediate family visa" for him. *Id.*

"[D]ue process requires collateral review of deportation orders that form the basis of a prosecution for illegal entry, [because] 'where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.'" *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015) (quoting *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987)). As discussed above, however, the opportunity to contest an underlying deportation order is limited by statute. 8 U.S.C. § 1326(d). Under the Fifth Circuit's standards, Melo-Cedano would have to show "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Cordova-Soto*, 804 F.3d 714, 718-19 (5th

Cir. 2015). Only by satisfying these prerequisites could Melo-Cedano have been eligible to contest the underlying deportation order. He has not alleged that he could have done so. Given Melo-Cedano's narcotics-related felony conviction, the prejudice requirement alone would have been a particularly difficult hurdle to overcome. Therefore, this ground does not entitle Melo-Cedano to relief.

### C. Ground Four

Melo-Cedano also challenges the enhancement of his sentence under the United States Sentencing Guidelines. Melo-Cedano's argument is that the Court erred in imposing a 12-level enhancement on his offense level. However, "a claim that the District court erred in calculating Movant's offense level under the sentencing guidelines cannot be raised or considered in [any] 2255 action." *Razo-Elizarraras v. United States*, No. 7:13-CR-577-1, 2016 WL 8740495, at *4 (S.D. Tex. Nov. 29, 2016), *adopted by*, No. CR M-13-5771-1, 2017 WL 1409323 (S.D. Tex. Apr. 20, 2017). A movant may only invoke § 2255 where: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). An attack on a "technical application of the sentencing guidelines . . . is not a constitutional issue cognizable in a 2255 proceeding." *United States v. Brown*, 8 F.3d 22 (5th Cir. 1993). Melo-Cedano's attempt to make such an attack, therefore, is meritless.

Finally, Melo-Cedano contends that the United States Sentencing Guidelines' definition of "drug trafficking offense" is unconstitutionally vague. The Supreme Court's decision in *Beckles v. United States* forecloses this argument. 137 S. Ct. 886 (2017). The United States Sentencing Guidelines are not subject to vagueness challenges. *De La Cruz-Tellez v. United States*, 2017 WL 3621780, at *1 (N.D. Tex. July 19, 2017); *Estanislao v. United States*, 2017 WL 2588078 (C.D. Ill. June 14, 2017). The Court has specifically rejected similar vagueness challenges to enhancements under the sentencing guidelines, applying the Supreme Court's *Beckles* decision. *Gonzalez-Contreras v. United States*, No. 1:16-CV-142, 2017 WL 6033157 (S.D. Tex. Oct. 26, 2017), *adopted by*, No. 1:16-CV-142, 2017 WL 6049391 (Dec. 5, 2017). Thus, Melo-Cedano's final ground for relief also fails.

## V.    Evidentiary Hearing

In the instant case, the record is adequate to dispose fairly of Melo-Cedano's claims. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981). As such, an evidentiary hearing is unnecessary. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

## VI.    Recommendation

It is recommended that Melo-Cedano's § 2255 Motion be **DISMISSED** with prejudice. It is further recommended that no certificate of appealibility shall issue.

## VII.   Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted).  Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*. at 484.  Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id*.

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability should not issue in this case because Melo-Cedano has not made a substantial showing of the denial of a constitutional right.

### VIII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 25th day of July, 2018.


_____
**Ignacio Torteya, III**
**United States Magistrate Judge**